**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**SAMUEL & STEIN**
Michael Samuel (MS 7997)
1441 Broadway
Suite 6085
New York, New York 10018
(212) 563-9884
michael@samuelandstein.com

Attorneys for Plaintiff, Individually
and on behalf of all others similarly
situated

| | |
|---|---|
| Raul Policarpo, and Natalio Ceballos, on behalf of themselves, and all other persons similarly situated, | DOCKET NO. _____ |
| Plaintiff, | |
| - vs. - | **COMPLAINT** |
| April Corp., d/b/a/Terra Market, Blanca Gonzalez, and John Does #1-10, | **COLLECTIVE ACTION** |
| Defendants. | |

Plaintiffs Raul Policarpo and Natalio Ceballos, by and through their undersigned attorneys, for their complaint against defendants April Corp., Terra Market, Blanca Gonzalez and John Does #1-10, allege as follows, on behalf of themselves and on behalf of all other persons similarly situated:

## NATURE OF THE ACTION

1.    Plaintiffs Raul Policarpo and Natalio Ceballos allege on behalf of themselves and on behalf of other similarly situated current and former employees of defendants April Corp., Terra Market, Blanca Gonzalez, and John Does #1-10, who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that they are entitled to: (i) compensation for wages paid at less than the statutory minimum wage, (ii) unpaid wages from defendants for overtime work for which they did not receive overtime premium pay as required by law, and (iii) liquidated damages pursuant to the FLSA, 29 U.S.C. §§ 201 et seq., because the defendants' violations lacked a good faith basis.

2.    Mr. Policarpo and Mr. Ceballos further complain that they are entitled to (i) compensation for wages paid at less than the statutory minimum wage; (ii) back wages for overtime work for which defendants willfully failed to pay overtime premium pay as required by the New York Labor Law §§ 650 et seq. and the supporting New York State Department of Labor regulations; (iii) compensation for defendants' violations of the spread-of-hours requirements of New York Labor Law; (iv) liquidated damages pursuant to

New York Labor Law for these violations; and (v) statutory damages for defendants' violation of the Wage Theft Prevention Act.

## THE PARTIES

3.    Plaintiff Mr. Policarpo is an adult individual residing in the Bronx, New York.

4.    Plaintiff Natalio Ceballos is an adult individual residing in Brooklyn, New York.

5.    Mr. Policarpo and Mr. Ceballos each consent in writing to be a party to this action pursuant to 29 U.S.C. § 216(b); his written consent was previously filed.

6.    Defendant April Corp., d/b/a/ Terra Market, is a domestic business corporation organized under the law of the State of New York (hereinafter referred to as "Terra Market") with a principal place of business at 533 Ninth Avenue, New York, New York 10018.

7.    Defendant April Corp. owns and operates Terra Market, a wholesale and retail produce market, with a principal place of business at 533 Ninth Avenue, New York, New York 10018.

8.    At all relevant times, defendant Terra Market was an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the

FLSA, 29 U.S.C. §§ 206(a) and 207(a).

9.  Upon information and belief, defendant Blanca Gonzalez is an adult individual residing in the city of New York, state of New York.

10.  At all relevant times, defendant Terra Market has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

11.  Upon information and belief, at all relevant times, defendant Terra Market has had gross revenues in excess of $500,000.00.

12.  Upon information and belief, at all relevant times herein, defendant Terra Market has used goods and materials produced in interstate commerce, and has employed at least two individuals who handled such goods and materials.

13.  Upon information and belief, defendant Blanca Gonzalez is an owner or part owner and principal of Terra Market, who has the power to hire and fire employees, set wages and schedules, and maintain their records.

14.  Defendant Blanca Gonzalez was involved in the day-to-day operations of Terra Market and played an active role in managing the business.

15. Upon information and belief, defendants John Does #1-10 represent the other owners, officers, directors, members, and/or managing agents of defendant Terra Market, whose identities are unknown at this time, who participated in the day-to-day operations of defendants, who have the power to hire and fire employees, set wages and schedules, and retain their records.

16. Defendants constituted "employers" of Mr. Policarpo and Mr. Ceballos as that term is used in the Fair Labor Standards Act and New York Labor Law.

<u>**JURISDICTION AND VENUE**</u>

17. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Mr. Policarpo's and Mr. Ceballos's state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Mr. Policarpo's and Mr. Ceballos's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

18. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because defendants' business is located in this district.

## COLLECTIVE ACTION ALLEGATIONS

19. Pursuant to 29 U.S.C. § 206 and § 207, Mr. Policarpo and Mr. Ceballos seek to prosecute their FLSA claims as a collective action on behalf of a collective group of persons defined as follows:

> All persons who are or were formerly employed by defendants in the United States at any time since May 11, 2018, to the entry of judgment in this case (the "Collective Action Period"), who were employees of Terra Market, and who were not paid statutory minimum wages and/or overtime compensation at rates at least one-and-one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

20. The Collective Action Members are similarly situated to Mr. Policarpo and Mr. Ceballos in that they were employed by defendants as non-exempt employees, and were denied payment at the statutory minimum wage and/or were denied premium overtime pay for hours worked beyond forty hours in a week.

21. They are further similarly situated in that the defendants had a policy and practice of knowingly and willfully refusing to pay them the minimum wage or overtime.

22. Mr. Policarpo, Mr. Ceballos and the Collective Action Members perform or performed the same or similar primary duties, and were subjected to the same policies and

practices by defendants.

23.   The exact number of such individuals is presently unknown, but is known by defendants and can be ascertained through appropriate discovery.

### FACTS

24.   At all relevant times herein, the defendants owned and operated a wholesale and retail produce market in Manhattan, New York.

25.   Mr. Policarpo was employed as a stocker at Terra Market from approximately 2016 until September 17, 2020.

26.   Mr. Ceballos was also employed as a stocker at Terra Market, from approximately August 6, 2017 until August 8, 2020.

27.   Mr. Policarpo's and Mr. Ceballos's work was performed in the normal course of the defendants' business and was integrated into the business of defendants, and did not involve executive or administrative responsibilities.

28.   At all relevant times herein, Mr. Policarpo and Mr. Ceballos were employees engaged in commerce and/or in the production of goods for commerce, as defined in the FLSA and its implementing regulations.

29.   During his employment by defendant Terra Market, Mr. Policarpo worked a regular schedule of six days per

week, consisting of 10-hours shifts on Mondays, Fridays and Saturdays; nine-hour shifts on Tuesdays and Wednesdays, and a seven-hour shift on Sundays.

30. As a result, Mr. Policarpo was working approximately 55 hours per week during his employment with the defendants.

31. During 2020, Mr. Policarpo did not work during March and April because the defendants' business was closed due to Covid-19.

32. After the business re-opened, during May 2020, through the end of his employment, Mr. Policarpo worked a five days per week schedule, for a total of approximately 40 hours per week.

33. Mr. Policarpo was paid a fixed weekly salary by company check throughout his employment by the defendants.

34. During 2016 Mr. Policarpo was paid at a rate of $580 per week; during 2017 Mr. Policarpo was paid at a rate of $640 per week; during 2018 Mr. Policarpo was paid at a rate of $680 per week; during 2019 Mr. Policarpo was paid at a rate of $720 per week; during January and February of 2020 Mr. Policarpo was paid at a rate of $750 per week; and from May through September 2020 Mr. Policarpo was paid at a rate of $650 per week.

35.  Mr. Policarpo received this amount each week for all hours he worked, regardless of the exact number of hours he worked in a given week.

36.  Mr. Ceballos worked a regular schedule consisting of six days per week during his employment by defendant Terra Market, from 7 a.m. to 5 p.m. on Mondays, Tuesdays and Wednesdays, and from 7 a.m. to 6 p.m. on Thursdays, Fridays and Saturdays, with Sundays off.

37.  As a result, Mr. Ceballos worked approximately 60 hours per week during his employment with the defendants.

38.  Mr. Ceballos was paid a fixed weekly salary by company check throughout his employment.

39.  During 2017, Mr. Ceballos was paid $720 per week; during 2018, Mr. Ceballos was paid $810 per week; during 2019 and 2020, Mr. Ceballos was paid $900 per week.

40.  Mr. Ceballos received those amounts each week for all hours he worked, regardless of the exact number of hours he worked in a given week.

41.  Mr. Policarpo's effective rate of pay was sometimes below the statutory New York City minimum wage in effect at relevant times.

42.  Defendants' failure to pay Mr. Policarpo an amount at least equal to the New York City minimum wage in

effect during relevant time periods was willful, and lacked a good faith basis.

43. Mr. Policarpo and Mr. Ceballos were paid by company check throughout their employment, and they received no paystubs or wage statements of any sort with their pay.

44. In addition, defendants failed to pay Mr. Policarpo and Mr. Ceballos any overtime "bonus" for hours worked beyond 40 hours in a workweek, in violation of the FLSA, the New York Labor Law, and the supporting New York State Department of Labor regulations.

45. Defendants' failure to pay Mr. Policarpo and Mr. Ceballos the overtime bonus for overtime hours worked was willful, and lacked a good faith basis.

46. Defendants also failed to pay Mr. Ceballos and additional hour's pay at the New York minimum wage for each shift that exceeded 10 hours, in violation of New York labor law and its supporting regulations.

47. Defendants failed to provide Mr. Policarpo and Mr. Ceballos with a written notice providing the information required by the Wage Theft Prevention Act – including, *inter alia*, defendants' contact information, their regular and overtime rates, and intended allowances

claimed — and failed to obtain their signatures acknowledging the same, upon their hiring or at any time thereafter, in violation of the Wage Theft Prevention Act in effect at the time.

48. Defendants failed to provide Mr. Policarpo and Mr. Ceballos with weekly records of their compensation and hours worked, in violation of the Wage Theft Prevention Act.

49. Upon information and belief, throughout the period of Mr. Policarpo's and Mr. Ceballos's employment, both before that time (throughout the Collective Action Period) and continuing until today, defendants have likewise employed other individuals like Mr. Policarpo and Mr. Ceballos (the Collective Action Members) in positions at the defendants' restaurants that required little skill, no capital investment, and with duties and responsibilities that did not include any managerial responsibilities or the exercise of independent judgment.

50. Defendants applied the same employment policies, practices, and procedures to all Collective Action Members, including policies, practices, and procedures with respect to the payment of minimum wages and overtime.

51. Upon information and belief, Defendants have failed to pay these other individuals at a rate at least equal to the minimum wage, in violation of the FLSA and the New York Labor Law.

52. Upon information and belief, these other individuals have worked in excess of forty hours per week, yet defendants have likewise failed to pay them overtime compensation of one-and-one-half times their regular hourly rate in violation of the FLSA and the New York Labor Law.

53. Upon information and belief, these other individuals have worked daily shifts exceeding 10 consecutive hours, yet defendants have failed to pay them an additional hour's pay at the applicable minimum wage for each such shift.

54. Upon information and belief, these other individuals were not provided with required wage notices or weekly wage statements as specified in New York Labor Law §§ 195.1, 195.3, and the Wage Theft Prevention Act.

55. Upon information and belief, while defendants employed Mr. Policarpo, Mr. Ceballos and the Collective Action members, and through all relevant time periods, the defendants failed to maintain accurate and sufficient time records or provide accurate records to employees.

56.  Upon information and belief, while defendants employed Mr. Policarpo, Mr. Ceballos and the Collective Action members, and through all relevant time periods, the defendants failed to post or keep posted a notice explaining the minimum wage and overtime pay rights provided by the FLSA or New York Labor Law.

## COUNT I

### (New York Labor Law – Minimum Wage)

57.  Mr. Policarpo and  Mr. Ceballos repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

58.  At all relevant times, Mr. Policarpo and Mr. Ceballos were employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651.

59.  Defendants willfully violated Mr. Policarpo's rights by failing to pay him compensation in excess of the statutory minimum wage in violation of the New York Labor Law §§ 190-199, 652 and their regulations.

60.  Defendants' failure to pay compensation in excess of the statutory minimum wage was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

61.  Due to defendants' New York Labor Law violations, Mr. Policarpo is entitled to recover from defendants his unpaid compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

## COUNT II

### (Fair Labor Standards Act - Overtime)

62.  Mr. Policarpo and Mr. Ceballos, on behalf of themselves and all Collective Action Members, repeat, realleges, and incorporates by reference the foregoing allegations as if set forth fully and again herein.

63.  At all relevant times, defendants employed Mr. Policarpo, Mr. Ceballos and each of the Collective Action Members within the meaning of the FLSA.

64.  At all relevant times, defendants had a policy and practice of refusing to pay overtime compensation to their employees for hours they worked in excess of forty hours per workweek.

65.  As a result of defendants' willful failure to compensate their employees, including Mr. Policarpo, Mr. Ceballos and the Collective Action Members, at a rate at least one-and-one-half times the regular rate of pay for

work performed in excess of forty hours per workweek, defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

66. The foregoing conduct, as alleged, constituted a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a), and lacked a good faith basis within the meaning of 29 U.S.C. § 260.

67. Due to defendants' FLSA violations, Mr. Policarpo, Mr. Ceballos and the Collective Action Members are entitled to recover from defendants their unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**COUNT III**

**(New York Labor Law - Overtime)**

68. Mr. Policarpo and Mr. Ceballos repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

69. At all relevant times, Mr. Policarpo and Mr. Ceballos were employed by the defendants within the meaning of the New York Labor Law, §§ 2 and 651.

70.    Defendants willfully violated Mr. Policarpo's and Mr. Ceballos's rights by failing to pay them overtime compensation at rates at least one-and-one-half times the regular rate of pay for each hour worked in excess of forty hours per workweek in violation of the New York Labor Law §§ 650 et seq. and its supporting regulations in 12 N.Y.C.R.R. § 146.

71.    Defendants' failure to pay overtime was willful, and lacked a good faith basis, within the meaning of New York Labor Law § 198, § 663 and supporting regulations.

72.    Due to defendants' New York Labor Law violations, Mr. Policarpo and Mr. Ceballos are entitled to recover from defendants their unpaid overtime compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

## COUNT IV

### (New York Labor Law – Spread of Hours)

73.    Plaintiffs repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully again herein.

74.  At all relevant times, Plaintiffs were employed by the defendants within the meaning of New York Labor Law §§ 2 and 651.

75.  Defendants willingly violated Mr. Ceballos's rights by failing to pay him an additional hour's pay at the minimum wage for each day he worked a shift lasting in excess of ten hours from start to finish, in violation of the New York Labor Law § 198, § 163 and supporting regulations.

76.  Due to defendants' New York Labor Law violations, Mr. Ceballos is entitled to recover from defendants his compensation, liquidated damages, interest, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to New York Labor Law § 198, and § 663(1).

### **COUNT V**

### **(New York Labor Law – Wage Theft Prevention Act)**

77.  Plaintiffs repeat, reallege, and incorporate by reference the foregoing allegations as if set forth fully and again herein.

78.  At all relevant times, Mr. Policarpo and Mr. Ceballos were employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651.

79. Defendants willfully violated Plaintiffs' rights by failing to provide them with the wage notice required by the Wage Theft Prevention Act when he was hired, or at any time thereafter.

80. Defendants willfully violated Plaintiffs' rights by failing to provide them with weekly wage statements required by the Wage Theft Prevention Act at any time during his employment.

81. Due to defendants' New York Labor Law violations relating to the failure to provide paystubs, Plaintiffs are entitled to recover from the defendants statutory damages of $250 per day from 2016 through the end of their employment, up to the maximum statutory damages.

82. Due to defendants' New York Labor Law violations relating to the failure to provide wage notices,  is Plaintiffs are entitled to recover from the defendants statutory damages of $50 per day from 2016 to the termination of their employment, up to the maximum statutory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Policarpo and Mr. Ceballos respectfully request that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and appointing Mr. Policarpo, Mr. Ceballos and their counsel to represent the Collective Action members;

b. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

c. An injunction against the defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

d. A compensatory award of unpaid compensation, at the statutory overtime rate, due under the FLSA

and the New York Labor Law;

e.  Compensatory damages for failure to pay the minimum wage pursuant to New York Labor Law;

f.  Compensatory damages for failure to pay the spread-of-hours compensation pursuant to New York Labor Law;

g.  An award of liquidated damages as a result of defendants' willful failure to pay the statutory minimum wage and overtime compensation pursuant to 29 U.S.C. § 216;

h.  Liquidated damages for defendants' New York Labor Law violations;

i.  Statutory damages for defendants' violation of the New York Wage Theft Prevention Act;

j.  Back pay;

k.  Punitive damages;

l.  An award of prejudgment and post-judgment interest;

m.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

       n.  Such  other,  further,  and  different  relief  as

           this

Court deems just and proper.

Dated: May 11, 2021

<u>/s/ Michael Samuel</u>
Michael Samuel (MS 7997)
SAMUEL & STEIN
1441 Broadway
Suite 6085
New York, New York 10018
(212) 563-9884
Attorneys for Plaintiffs,
*Individually and on behalf of an*
*FLSA collective action*